Good morning, may it please the court Mark Jones on behalf of the appellant County of Lake This case is a is now about and has always been about one central issue and that is Is Sharon losing her a qualified individual under the FEHA more specifically? Could miss losing her as of April of 2004? Perform the essential functions of the position for which she had held for quite some time Well, isn't the real issue whether the jury was entitled to self find? That's a slightly different issue. I mean, we're after a jury trial here. That's right and a jury find track Finding on on instructions that you're not challenging. That's correct Because I think there's a total failure of evidence to not not just a lack of substantial evidence But a failure of evidence to support the that's a pretty hard barrier to overcome. I know it is your honor. I know it is But it the reason you have to start with the qualified individual analysis is because the real key in the case I think is what is the essential function of her position? It is not just the ability to occasionally restrain a violent or aggressive But it was proper for the jury to determine the essential functions, right? It was and you have no complaint about the instructions the jury got. That's right, Your Honor But the problem is is that the evidence was undisputed and unequivocal as to what the essential function was So the jury neither the jury nor the judge could disregard the undisputed evidence of what that was The Wasn't in fact undisputed as my understanding you had some documents But you also had it was also a a set of I know on the ground facts in terms of what she actually did And it was those together that informed the question of what was essential her essential functions, particularly given California law which has a list of factors of which the the Company's designation is one, but not dispositive. That's true. That's true but the problem with with it that analysis is is that It is not an individual officers individual Experience with the frequency of retaining wards that makes the determination It's not determinative of what the essential function is the central function is determined by The employers input the employees input which happened here and you look at those list of factors as you noted in the California Regulations that deal with with how that is determined We've cited a number of cases both in this circuit and around the country that clearly indicate that an individual Officer and then these are peace officer cases So there's they're slightly different than your normal I suppose run-of-the-mill case because you have a serious safety was there evidence of people other than her about the Realistic number of times she would have to engage in this activity. There was undisputed evidence from The Department of Probation had mr. Buck holds that there in night in 2004, which is the critical year that we're talking about There were 90 incidents where juveniles and this is in our brief where juveniles had to be restrained So we're not talking about and it may be that an officer such as miss losing her in her experience She had to do that maybe every couple of months But the fact is these happen regularly and it's not like they're on some sort of timetable The cases are clear and the evidence was absolutely clear in this case that they are random. These are random Unexpected in the sense of when they occurred the one thing's for sure in a juvenile hall You can expect there will be occasions in which You will have to put as a correctional officer put your hands on a juvenile and there were occasions when ms Louis Singer had to do that and did do that. Yes She did there are one ever said that she didn't do it Properly or that her wrist interfered in any way with her ability to do it there are I believe two occasions after her doctor deemed her wrist to be permanently a Was engaged with other officers in restraining wards, there's a there's a conflict in the evidence and obviously looking at the evidence Exactly. It looks so looking at all the evidence in her best-case scenario is she established that? She could restrain wards on an occasional basis That is what she was necessary for what she actually did do But that is not what the essential funk you have to go back though and the idea that the jury Could determine that the essential function was something other than what the undisputed evidence was Is is improper the fact is you didn't complain about the jury instructions? No, I did not you didn't complain about the fact that the jury made that determination. So absolutely we did we did in our motion for judgment both before Trial, I mean before the verdict was entered when when the district court indicated that in her it was her practice Never to grant one of those she was gonna let it go to the jury And then we then that was all part of our post Verdict motion you I think what judge Roth is asking is not whether you disagreed with the conclusion But whether you disagreed with submitting this to the jury in general whether yeah Whether I disagree I disagreed with the judge allowing us to go to the jury Absolutely, that's why we filed Well on a summary judgment basis But not on the basis that the issue was not properly for a jury if there's conflicting facts We did your honor and that was part of our pre our pre verdict. Why why would it not be proper for a jury? Well, you haven't appealed in that crowd anyway, but I know we It's it's proper for a jury to determine what the essential function of the job is right? The jury is not allowed though. It's improper for a jury to Disregard the undisputed evidence of every single witness including this losing her every single piece of paper that that related to that function that Indicated that the essential function was not just the ability to occasionally restrain award That was her individual experience. Wasn't it also true that even if that that the only Evidence that she couldn't do what was prescribed to be done was a Recommendation by her doctor which there was a dispute about whether that was a limitation or simply him saying well This would be you know preferable but not just saying that if she couldn't do it there there were No one is taking the position. The county's not taking the position that ms. Loosener could not on occasion following her doctors Recommendations limitations Occasionally restrain a ward my evidence is is that she couldn't do it as much as she was likely to be required to do it because let me on the issue and in response to that question on the issue of Whether these were recommendations or what whether these were limitations and there may be some Interpretation that can be done or in terms of dr. Nelson's Report the fact is is that the district court in its order Denying our my clients motion for judgment as a matter of law refers to those And I quote dr. Nelson's suggestion that She meaning is losing her needs to limit the number of times that she has to forcefully restrain a client is Not a declaration that losing her was incapable of performing the essential function of restraining wars and everybody agrees with that But then she goes on to say and this this is not subject to interpretation. This is what the unequivocal undisputed evidence was The judge goes on to say Dr. Nelson's assertion is an assertion that losing her needed to limit how often she had to use force She was under a limitation even with judge Armstrong's interpretation of the evidence She had to be limited in the number of times how frequently she could use force Now the fact that historically she and her personal experience Had to do this maybe every couple of months is not determinative. The issue is You have a correctional Testified to at the trial. I'm sorry. What did dr. Nelson testify to at the trial? Well one thing he testified to that it as of December of 2003 that she in his view she was permanently incapacitated from performing that job and Then he went on to say Somewhat contradictorily, but he went on to say that she could she could perform this job. Not all the time She could perform the restraint function. Not all the time. In fact, he even said she could do it every once in a while Now think about that. You have a correctional officer who who has to have the ability whether you use it or not Who has to have the ability? to Restrain or put their hands on an Aggressive juvenile just like a correctional officer very similar to any police officer At any time and that means that if you do it today, you have to be able to do it tomorrow Doesn't matter. She can't do it every hour. She can't do it every hour, but but there's no Testimony that the job required it. Yes, there was absolutely Mr. Buchholz testified with without any dispute any contradictory evidence that These incidents could happen five times in a day. It would be rare, but that could happen It's more likely that it's not going to happen that often But again, it's it's turning it's turning the FEHA on its head something that the jury had to consider They had to can sure they had to consider The evidence as to the essential function But see if you if you look at the cases that we've cited both in this circuit and all around the country Well, you seem to be saying that the essential function is that she be able to do it continuously No, and that and that's where judge Armstrong even even the employment Job description says what 20 to 30 percent of the job, right? And that's right testimony that she couldn't do it 20 30 percent no, the difference is and this is where I think the district court got off on the wrong track because She characterized it as continuously that we're saying that she has to be able to do it all the time Not at any time all the time in other words, and it's not semantics. There's a difference between Being able to constantly perform this function. That's not our position. Our position is you have to be you have to have the constant Ability to be able to perform this function. There's a very clear distinction between those and as their testimony Well, there is testimony both ways as to whether she could constantly perform. No, there is not there There is no testimony and again You have to get you have to start with there is a testimony she could the question is if she had to do it Continuously right the effect it might have on her ability there. There is no testimony There is no evidence in the case from any witness That indicates that she could do this job more than on an occasional basis if she was called to do that That is the complete failure of proof Her doctors indicated that she could do it on an occasional every now and then basis That's what because that's what she said. She had been doing and they said well, then then she can continue to do it that way so That is that but that's the real difference that the essential function is not determined And this is in Hoskins and Holbrook and Kaplan and all the cases that we cited is not determined by an individual Employees experience it's determined by all of the factors That judge was on noted and those factors were all in the evidence If you look at our brief and you look at the testimony of miss losing her She admits in several places consistently as did all the other witnesses the correctional officers the head of probation That you that it to be qualified for that position You have to be able to do that at any time and that does not mean every two months that means if you got to be able to do it today and This afternoon if you have to and Friday if you have to Now whether or not you are actually called to do that It's similar to a police officer who has to who has a problem pulling his revolver And he goes to his doctor and the doctor says you can do that And you just don't do it more more than every now and then it's not one of the factors to consider The work experiences of past incumbents. Yes. Yes. That's one. That's one of them All right, and didn't was not the jury properly considering that well I don't know if they were or not, but they disregarded all of the evidence that was undisputed as to the essential function. I better reserve my minute Excuse me You said they disregarded all the evidence But some of the evidence was the main evidence in that which you've given us so far was that there were 90 incidents over a what several year period one year a one-year period and and divided up by correctional officers. How many is that? That's probably About 12 or 13 probably once a week It's not once a week. It's once a week and if you use all if everybody's that's what I mean If you if you use everybody one person was doing it, right, but there isn't one person there were Right, so we're six people. So in fact it was about once a month which is about what she said Well, you've got a sit you've got You've got a year and you've got 90 incidents. So that has six people. So that's 15 per person. I know but again it That assumes that these happen on reality. You're saying the jury had to ignore the on-the-ground reality Absolutely and not just the on-the-ground reality, but the I'm using up their last of my time in answering this question, but The jury had to have ignored the undisputed evidence as to what the essential function was and that was that the Undisputed testimony from is losing her as well That a correctional officer has to be able to do that function whether you have whether you do it or not Maybe she never had to do it But you have to have the ability to do it because it's not something that gets calendar and say this month We'll do this the next month. We'll do that. I think you've made your point. Thank you. I guess I'll reserve my I think I'm over Thank you Good morning, Your Honor's Chris Redburn for a Pele Sharon Boosinger To start out where the county ended Let me say that She could do all of the functions of the job and that the on the ground experience her on-the-ground experience in the on-the-ground experience of other guards who Also testified at the trial was that she had to restrain These juveniles approximately once a month in addition. There's evidence that hasn't been mentioned by the county that in they did a survey of Restraint incidents in which she was involved between 2003 and 2004 there was one in January And one in November of 2003 and one in January February and March of 2004 Which is considerably less than one a month on the average although in one year it was one but she wasn't working some of that time, right During that period that I just cited she was working the entire time Well, no, I thought she wasn't working for some in 2003 At 2003 she was out on a on a leave So the bottom line of the County's argument is that a person who is actually doing a job is not able to do the job and the illogic of it It's enough. I think to defeat the attack on the factual showing in this case it's also the County has stated that even if she never had to do it in 16 years, even if she never had to An essential job function because the possibility exists out there somewhere that she might have to but we're here in the Court of Appeal not before the jury and the issue before this court is whether or not there is some evidence and looking at the evidence the court assumes the facts in favor of the judgment below and in favor of the trial courts post trial rulings and Based on that standard of review It seems to me this court can't assume that An essential job function is something that the plaintiff never had to do in all her years at the juvenile hall Certainly, I don't know if I'd go that far There are essential essential job functions that someone never has to do that are relevant but under the instructions given to the jury here including The factor that testimony from Others who have done the job is relevant. I Think the jury verdict here has to be viewed in that light But I think particularly where we are dealing with security people law enforcement That the fact that one particular person has never had to do something does not mean it is not an essential function of the job I Didn't mean to imply that it couldn't be an essential function just because she didn't have to do it What I meant to imply is fact that she had never done. Yeah a jury could find That because she had done it only only once a month That that that was the that she was able to do it Yeah, and that was the essential that was the definition of the essential job function. They could conclude that as a matter of Fact and it's not this court's role really to Weigh one fact against another and decide which one to go with and which one not to go with What was her position? What did she able to argue this to the? Was the county able to argue this to the jury that she was not able to to do this On a regular basis. Yes, your honor As a matter of fact the argument here sounds too much like a jury argument like the argument that was made to the jury in This case and that is one of the underlying problems with the appeal. It's a it's a substantial evidence approach which is I Think I can safely say disfavored in the court of appeal at least the standards are very very demanding and they're definitely not met here What about assuming we got by that the other issue in the case? I think was a reasonable accommodation issue ie did she? Sufficiently propose or or what she said where she denied a reasonable accommodation There's ample evidence that she in in California law the reasonable accommodation issue is a separate claim for relief unlike under the ADA and There's certainly ample evidence that there wasn't a failure. There wasn't a failure to accommodate Was she asking for an accommodation? Yes, she was what accommodation was she met with? It was an off-the-cuff meeting with mr. Buchholz and miss Lloyd Singer asked Either that a more experienced person be placed on the graveyard shift if she was to be on the graveyard shift or that she be placed on the day shift Those were specific requests that she made for accommodations Which he denied during trial there was evidence that a wrist brace might have helped reduce the pain She felt from her wrist injury This is another possible accommodation and there are even accommodations that we can't really quite identify but The record shows that Steve Ryan and the County Council themselves talked to mr. Buchholz told him that there were some accommodations. It's the record doesn't say what they might have been but there were actual accommodations that could have been proposed and Mr. Buchholz refused to offer those So there's ample evidence of a failure to accommodate under California Government Code section one two, isn't it in the record that every every Juvenile Officer had to be able to perform all the functions of the job Well, they had to be able to under under the law They have to be able to perform the essential job functions and I do want to make it clear that it's not been disputed that restraint of They had to be interchangeable so that so that you couldn't that every one of them Had to be able to perform all the functions of the job You couldn't it was not a situation where you could rely on one person on duty to perform some of the Functions and another person on duty to perform other functions. That's true. Your honor It's not disputed that restraint of juveniles is an essential job function. What the dispute is about the Breadth of that requirement and the county has tried to argue that you have to be able to do it all the time Basically, they've edged right up to to that point and then kind of backed away But but that's really basically their argument and there's no evidence That you had to be able to do it all the time. There's and most importantly for this court There's ample evidence that about once a month was how often the restraint had to be applied There's also a third cause of action For a failure to engage in the interactive process, which is also a separate cause of action under a state law And there's ample evidence there. Also that the county failed to engage in the interactive process It failed it failed to consult with her about Possible accommodations after her first surgery and therefore it imposed limitations which were unrealistic it failed to consult with her about an assignment after her second surgery and gave her a job which was harder on her wrist and than the Guard job was Mr. Buchholz refused to meet with her in 2004 when she wanted to talk about accommodations and She was removed from her position without any discussion about what accommodations might allow her to continue She complained to the Board of Supervisors about discrimination on the basis of a physical disability and got no response There was no ergonomic evaluation. No functional capacity evaluation and no real Back and forth about what might be possible to let her stay on the job that she had Seems like there is some contradiction between her Position that she could do the job perfectly well and the notion that she needed accommodation to stay on the job It's not a contradiction. Your Honor. I think it's it's our position is that both both were true and There's no there's no law that says we have to we're forced to an election between Between these two things the facts of the case are that she could do the job and if she didn't Make some efforts She would be in a lot of she could be in a lot of pain and there were ways to reduce the pain But she could do the job and endure the pain. The pain was not causing further damage to her so her doctor released her without restrictions and therefore If she was willing to endure a lot of pain, she could do the job without accommodation But to reduce her pain certain accommodations would be required. Did the jury find for her on? All the causes of action or in some? No, this was a very discerning jury It found for it found for the Plaintiff on this Fair Employment Housing Act discrimination claim. You said there were three separate causes of action Well, those are the three in which it found for the plaintiff. That's what I'm asking, all three. There were Federal and State Leave Act causes of action. But it did on all three of the FEHA claims. Yes, the three separate Claims for relief it did If there are no other questions, I have nothing else. Thank you. Thank you Case to start is submitted for decision
judges: Schroeder, Berzon, Roth